IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRIAN D. KIEHL                    *
                                  *
v.                                *      Civil Action No. WMN-13-2914
                                  *
ACTIONET, INC.                    *
                                  *
                                  *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM AND ORDER

On December 3, 2014, following a three-day jury trial, the jury returned a verdict finding that Plaintiff Brian D. Kiehl had not proven his claim of employment discrimination under the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. §§ 4301-4335, against his former employer, the Defendant ActioNet, Inc.  See Jury Verdict ¶ 1, ECF No. 80. Then, on December 31, 2014, twenty-eight days after the jury returned its verdict, the Plaintiffs filed this pending Motion for a New Trial, ECF No. 90, on the grounds that (1) the jury's verdict for ActioNet was against the clear weight of evidence, and if allowed to stand, would result in a miscarriage of justice, and (2) the Court erred in declining to include a jury instruction that itemized some types of evidence that may be considered in evaluating a "motivating factor."  The motion has been fully briefed and is ripe for review.  Upon a review of the papers, facts, and applicable law, the Court determines that no

hearing is necessary, Local Rule 105.6, and the motion will be
denied.

At issue during the trial was whether Kiehl's obligation to
attend annual training as a Navy Reservist was a "motivating
factor" in ActioNet's decision not to convert Kiehl from
temporary to permanent employment.  Kiehl was initially
recruited by a staffing agency, APEX Systems, to work as a
temporary employee for ActioNet as an Operations Manager for a
contract project between ActioNet and the U.S. Department of
Energy (DOE).  Kiehl was hired by the project's supervisors,
Program Manager Bill Lakner and Transition Manager Steven
Reinkemeyer, both veterans.  In addition to Lakner and
Reinkemeyer, Kiehl also worked with DOE Contract Representative
Brian Varine, a military reservist.  On September 27th or 28th,
2012, Kiehl disclosed to Reinkemeyer that he had an imminent
three-week annual military training obligation.  Kiehl described
Reinkemeyer's reaction as "very surprised, shocked" by the news.
On October 2, 2012, Kiehl was informed that he would not be
taken on as a full time employee of ActioNet and was discharged
from the DOE contract.

There was some dispute as to Kiehl's performance while on
the job, as Kiehl testified that he recalled receiving only
positive feedback regarding his performance while Reinkemeyer
testified that he felt as though Kiehl was underperforming.

Other witness testimony describes an absence of appraisal of Kiehl's performance, one way or the other.  Emails presented at trial describing Kiehl's performance – as either positive or lackluster – were dated after Kiehl's termination.

The jury heard testimony from Kiehl, Lakner, Reinkemeyer, ActioNet HR Director Janet Raleigh, Kiehl's former coworker Whitney Gray Hines, and APEX employees Anthony Pierouchakos and David Broussard.  The jury was also presented written evidence in the form of emails exchanged among Kiehl, employees of ActioNet, and employees of APEX, excerpts from the ActioNet Employee Handbook, and a letter submitted by Raleigh to the Department of Labor.  From this evidence the jury was charged to determine whether Kiehl demonstrated by a preponderance of the evidence that his military training obligation was a motivating factor in ActioNet's decision not to hire him on a permanent basis.  The jury determined that his obligation for service was not a motivating factor, and the Court entered judgment in favor of ActioNet.

Plaintiff seeks a new trial pursuant to Federal Rule 59(a), which states in pertinent part that "the court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed.  R. Civ. P. 59(a)(1)(A).  In the Fourth Circuit, the Court must set

aside the verdict and grant a new trial if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Minter v. Wells Fargo Bank, N.A., 762 F.3d 339, 346 (4th Cir. 2014) (citations omitted). When considering a grant of a new trial, a judge should exercise "his own independent judgment, after a weighing of all the evidence and any other pertinent factors, in determining whether the verdict . . . would result in a miscarriage of justice." Williams v. Nichols, 266 F.2d 389, 392 (4th Cir. 1959). Granting a new trial "is not a discretionary task, but a duty" and "so long as the jury verdict has been set aside, not from mere difference of opinion, but as against the clear weight of the evidence, the trial judge will be sustained." Swentek v. USAIR, Inc., 830 F.2d 552, 559 (4th Cir. 1987).

"When determining whether the evidence is sufficient to support the jury's verdict, the evidence must be reviewed in the light most favorable to [the prevailing party], giving them the benefit of all inferences." Talkington v. Atria Reclamelucifers Fabrieken BV, 152 F.3d 254, 264 (4th Cir. 1998). "Such a motion should be denied, unless there were substantial errors in evidentiary rulings or jury charges, or unless 'the evidence,

together with all inferences that can reasonably be drawn therefrom, is so one-sided that reasonable people could not disagree on the verdict.'" Perrin v. O'Leary, 36 F. Supp. 2d 265, 266 (D.S.C. 1998) (citation omitted). At bottom, however, in evaluating a motion for a new trial, the Court's focus should be on whether substantial justice has been done; that is, whether a new trial is required to prevent a miscarriage of justice. See 11 Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 2803 (2d ed. 1995) ("Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done.") and § 2805 ("The court has the power and duty to order a new trial whenever, in its judgment, this action is required in order to prevent injustice.").

Kiehl first argues that the jury's verdict for ActioNet is against the clear weight of evidence. He marshals the evidence as a simple comparison between his own testimony and that of Steven Reinkemeyer. In his view, other evidence is secondary to these two witnesses, and the testimony that supports Kiehl is corroborated, true, and verifiable while the testimony that supports ActioNet's case – especially from Janet Raleigh – is suspicious and full of self-serving motives. Thus, the clear weight of the evidence supports Kiehl and mandates a new trial.

Taken as a whole and in the light most favorable to ActioNet, however, the evidence demonstrates that a reasonable person could reach a verdict in ActioNet's favor and a new trial is not mandated.  The evidence showed that there was a general lack of documentation of Kiehl's performance – either good or bad – and there was some dispute as to how Kiehl should execute his job responsibilities.  Testimony revealed that although enthusiasm was high for Kiehl and his military service was seen as an asset, the relationship between Kiehl and ActioNet seemed to have cooled over the short term of Kiehl's employment.  The testimony recounted a general lack of communication and connection among the members of the DOE contract and a difference in approach regarding how to manage personnel.

While Kiehl would argue that the positive written communications were contemporaneous with his firing, and the negative emails in evidence were post-hoc, the fact of the matter is that all written communications regarding his performance – again, either good or bad – were sent after his termination.  As such, a finder of fact could equally infer that ActioNet's conduct was pretextual or merely informal in nature. It is also impossible to conclude, from the testimony at trial, that ActioNet's witnesses were not credible and suspicious in nature.  The record does not support Plaintiff's arguments that Whitney Gray Hine's testimony reflected "the bias of an employee

pressed to testify favorably toward her employer," that Janet Raleigh was "attempting to create a false narrative [of Kiehl's removal] through ActioNet's employees," or that Steven Reinkemeyer "offered false evidence."  At trial, Kiehl and ActioNet presented two remarkably different stories of their employment relationship and each side marshalled sufficient evidence to support its arguments such that the jury was required to reach its own conclusion as to the credibility of the witnesses and ActioNet's liability under USERRA.  The jury determined that Kiehl did not show by a preponderance of the evidence that his obligation for service was a motivating factor in ActioNet's decision and Kiehl's clear weight of evidence argument will not disturb the jury's verdict.

In the alternative, Kiehl argues that a new trial should be granted because the Court improperly excluded from the jury instructions a list of potential facts to use when evaluating whether Kiehl's military service was a "motivating factor" in ActioNet's decision.  ECF No. 90-1 at 24-26. "[I]t is well settled law that a trial court has broad discretion in framing its instructions to a jury.  Thus, the jury instructions will not furnish a basis for reversal of an adverse verdict so long as, taken as a whole, they 'adequately state the controlling law.'"  <u>Volvo Trademark Holding Aktiebolaget v. Clark Machinery Co.</u>, 510 F.3d 474, 485 (4th Cir. 2007).  "Instructions will be

considered adequate if construed as a whole, and in light of the

whole record, they adequately inform the jury of the controlling

legal principles without misleading or confusing the jury to the

prejudice of the objecting party." Rowland v. Am. Gen. Fin.,

Inc., 340 F.3d 187, 191 (4th Cir. 2003).

In preparation for the Charging Conference, Plaintiff

submitted a proposed jury instruction that itemized specific

facts to consider when evaluating whether his military service

was a "motivating factor" in Defendant's decision to terminate

employment:

> In determining whether Plaintiff has proven his
> claim, you may consider, among other things, the
> proximity in time between notice of Plaintiff's
> military service obligation and the decision not
> to convert him, any inconsistencies between the
> reasons given by Defendant for its actions and
> other actions of the employer, and any hostility
> towards Plaintiff's military service obligations
> expressed by Defendant.

ECF No. 49 at 4.  Plaintiff refers to these as the Sheehan

factors, a reference to Sheehan v. Dep't of Navy, 240 F.3d 1009,

1014 (Fed. Cir. 2001), which serves as the source of the

proposed instruction.  The Court struck this text and instructed

the jury on the relevant standard under USERRA as follows:

> In order to prevail on his claim, the plaintiff must
> prove by a preponderance of the evidence that his
> military service was a motivating factor in the
> defendant's decision not to convert him from temporary
> to permanent status.

8

So you're instructed that in showing that the
plaintiff's military service was a motivating factor
in the defendant's employment decision, the plaintiff
is not required to prove that his military service was
the sole motivation, or even the primary motivation,
for the defendant's employment decision, even though
other factors may have also motivated the defendant.

Military service is a motivating factor in a[n]
employment decision if the defendant relied on or took
into account or considered or conditioned its
employment decision on that consideration.  If you
find that the plaintiff has shown that his military
service was a motivating factor, the defendant
employer may avoid liability only if the employer
proves that it would not have converted the plaintiff
to a permanent job any way in the absence of the
plaintiff's military status.

Tr. III, 10:11-11:7.

Plaintiff argues that, in omitting the Sheehan factors,

which were "particularly apt in this case where they closely

mirror the evidence at trial," the "jury was deprived of

guidance as to how to properly infer a motivating factor under

USERRA, and Mr. Kiehl's case was prejudiced."  ECF No. 90 at 25.

The Court finds that, taken as a whole, the jury instructions

created neither deprivation nor prejudice.  In the section

explaining USERRA, the Court instructed the jury as to what to

look for – a motivating factor – and its relevance to

defendant's decision making process and any resulting liability.

The Court also provided instructions regarding the evaluation of

evidence – that they make all reasonable inferences from the

evidence – and the role of the attorneys in the trial.

Specifically, the Court instructed that the role of the attorneys was to "call your attention to certain facts and inferences that might otherwise escape your notice."  Tr. III, 5:14-:18.  Plaintiff's counsel did just that in his closing argument, essentially outlining the Sheehan factors by telling the jury: "Now, how do we make out a motivating factor here. Well, we do it because of the short time frame . . . we know that because of the hostility that had been expressed regarding Mr. Kiehl . . . and the inconsistencies in ActioNet's story." Id. 19:11-:24.

Plaintiff's closing argument was the proper place to discuss the Sheehan factors.  These factors, as embodied by the proposed instruction, present a non-exhaustive, non-binding list of evidence that a finder of fact may use in evaluating whether military service was a motivating factor in an adverse employment decision.  Presenting a non-exhaustive, non-binding list that highly favors one party risks confusion to the jury and may prevent the jury from weighing all the evidence presented at trial.  In the light of the whole record, the Court's instructions informed the jury of the general legal principles that guide a trial and the jury's decision, and provided the relevant USERRA standards.  The Court declines to grant a new trial on the ground of inadequate jury instructions.

Accordingly, it is this 24th day of March, 2015, ordered that:

    (1)   Plaintiff Brian D. Kiehl's Motion for a New Trial, ECF No. 90, is DENIED; and

    (2)   The Clerk of Court shall transmit a copy of this Memorandum and Order to all counsel of record.

_____/s/_____
William M. Nickerson
Senior United States District Judge